```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/1/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TROI TORAIN,

        Plaintiff,

      - against -

CLEAR CHANNEL BROADCASTING,
INC.,

        Defendant.

CLEAR CHANNEL BROADCASTING,
INC.,

      Counter-Claimant,

    - against -

TROI TORAIN,

      Counter-Defendant.

**OPINION AND ORDER**

06 Civ. 7012 (PKL)

**APPEARANCES**

CINQUE & CINQUE, P.C.
James P. Cinque, Esq.
845 Third Avenue, Suite 1400
New York, NY 10022

Attorneys for Troi Torain

WILSON SONSINI GOODRICH & ROSATI
Marina C. Tsatalis, Esq.
Amy K. Todd, Esq.
Erin W. Doyle, Esq.
1301 Avenue of the Americas, 40th Floor
New York, NY 10019

Attorneys for Clear Channel Broadcasting, Inc.

**LEISURE, District Judge:**

In this diversity case, plaintiff Troi Torain ("Torain")
brings suit against Clear Channel Broadcasting, Inc. ("Clear
Channel") for breach of contract, breach of implied covenant of
good faith and fair dealing, and violations of New York Labor
Law.   Clear Channel asserts counterclaims against Torain,
alleging breach of contract and contractual indemnification.
Currently pending before the Court is (i) Clear Channel's motion
for summary judgment seeking dismissal of Torain's complaint;
(ii) Clear Channel's motion for summary judgment on its
contractual indemnity claim; and (iii) Torain's motion for
summary judgment seeking dismissal of Clear Channel's
contractual indemnity claim.   For the reasons set forth below,
Clear Channel's motion for summary judgment on plaintiff's
complaint is GRANTED, and the parties' motions for summary
judgment on Clear Channel's contractual indemnity claim are
DENIED.

**BACKGROUND**

### I. Torain's Employment and Termination with Clear Channel

Torain is a radio host/personality, professionally known as
"Star." (Decl. of Troi Torain in Opp'n to Clear Channel's Mots.
For Summary Judgment, sworn to on Nov. 2, 2007, ("Torain Decl.")
¶ 1.)   The parties agree that Torain was considered an edgy and
provocative on-air radio personality when he was hired by Clear

1

Channel to host his morning show "Star & Buc Wild" on Clear
Channel's radio stations. (Id. ¶ 2; Def.'s Mem. 3.)[1]   In
connection with Torain's employment with Clear Channel, on or
about March 25, 2004, Torain and Clear Channel entered into a
written contract (the "Employment Agreement" or the "contract").[2]

---

[1] In an effort to avoid confusion and promote efficiency, throughout this
Opinion and Order the Court will use short citations to refer to the various
memoranda of law and statements of facts submitted in connection with these
motions for summary judgment.  With respect to Clear Channel's motion for
summary judgment on plaintiff's complaint, the Court will use "Def.'s Mem."
to refer to the Memorandum in Support of Defendant Clear Channel
Broadcasting, Inc.'s Motion for Summary Judgment of Plaintiff Troi Torain's
Complaint. Citations to "Pl.'s Opp'n" refer to Plaintiff Troi Torain's
Memorandum in Opposition to Defendant Clear Channel's Motion for Summary
Judgment on Plaintiff's Complaint.  Citations to "Def.'s Reply" refer to
Clear Channel Broadcasting, Inc.'s Reply Memorandum of Law in Support of its
Motion for Summary Judgment.  Citations to "Def.'s 56.1" refer to Defendant
Clear Channel Broadcasting, Inc.'s Statement of Undisputed Material Facts in
Support of its Motion for Summary Judgment of Plaintiff's Complaint, dated
September 28, 2007.  Citations to "Pl.'s Counter 56.1" refer to Plaintiff
Troi Torain's Local Civil Rule 56.1 Statement in Opposition to Defendant's
Motion for Summary Judgment on Torain's Complaint, dated November 2, 2007.
Citations to "Def.'s Reply 56.1" refer to Defendant Clear Channel
Broadcasting, Inc.'s Reply to Plaintiff's Local Civil Rule 56.1 Statement in
Support of Clear Channel's Motion for Summary Judgment on Torain's Complaint
and Response to the Additional Facts Submitted by Plaintiff Thereto, dated
November 16, 2007.  By contrast, with respect to the parties' motions for
summary judgment on Clear Channel's indemnification counterclaim, the Court
will use the same designations just described, but will add the word "Indem."
to the citations.  Thus, for example, citations to "Pl.'s Indem. Mem" refer
to Plaintiff and Counterdefendant Troi Torain's Memorandum of Law in Support
of Motion for Summary Judgment on Third Counterclaim, and citations to
"Def.'s Indem. Mem" refer to Memorandum in Support of Defendant Clear
Channel's Motion for Summary Judgment on its Contractual Indemnity Claim.
[2] The Employment Agreement was attached as Exhibit D to the Declaration of Amy
K. Todd in Support of Defendant Clear Channel Broadcasting, Inc.'s Motion for
Summary Judgment of Plaintiff Troi Torain's Complaint, sworn to on September
28, 2007, ("Todd Decl."), and as Exhibit B to the Declaration of Amy K. Todd
in Support of Defendant Clear Channel Broadcasting, Inc.'s Motion for Summary
Judgment on its Third Cause of Action for Contractual Indemnity Against
Plaintiff, sworn to on September 28, 2007 ("Todd Indem. Decl."), and was
filed under seal pursuant to the parties' confidentiality order.  All of the
contractual provisions relied upon by the parties, and discussed in this
Opinion and Order, are quoted in the parties' submissions and are therefore
incorporated in the summary judgment record.  Accordingly, the Court does not
believe it is necessary to unseal the Employment Agreement. Cf. Lugosch v.
Pyramid Co. of Onondoga, 435 F.3d 110, 123 (2d Cir. 2006) (holding as a
matter of law that documents submitted to the court in connection with

Pursuant to the Employment Agreement, Torain was to be employed by Clear channel from March 29, 2004 to March 28, 2007. (Employment Agreement § 3.)  However, Torain's employment with Clear Channel ended on May 10, 2006 when Clear Channel terminated Torain for his on-air statements about Raashaun Casey, his wife, Gia Casey, and their four year-old daughter. (See Todd Decl. Ex. E.)  Raashaun Casey was also a radio personality, with a radio show broadcasted on another radio station opposite Torain's program. (See Def.'s Mem. 1 n.2; Aff. of Gia Casey in Support of Def. Clear Channel Broadcasting Inc.'s Mots. For Summary Judgment, sworn to on Sept. 27, 2007 ("Casey Aff.") ¶¶ 3-5.)  The Court deems it unnecessary to detail all of the comments Torain made about the Caseys during the relevant time period.  It suffices to say that Torain made sexually explicit comments and racial slurs regarding Mr. and Mrs. Casey, as well as on-air comments concerning sexual relations with the Caseys' daughter, who was four years old at the time.  The parties do not dispute the substance of Torain's comments about the Caseys and their daughter.  Rather, the parties primarily dispute whether such statements rise to the

---

summary judgment are unquestionably judicial documents under the common law and are therefore entitled to a presumption of public access); Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982) (finding that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons").  Nevertheless, for ease of reference, the Court cites directly to "Employment Agreement" in discussing the contractual provisions at issue.

level of a terminable offense under the cause provisions in the Employment Agreement.  The parties also disagree as to which provisions in the Employment Agreement this Court can consider in determining whether Torain's termination violated the Employment Agreement.  While Clear Channel contends that it had grounds to terminate Torain under numerous provisions of the Employment Agreement (see Def.'s Mem. 5-6), plaintiff and plaintiff's manager, Wyatt Cheek, aver that the parties' negotiations and pre-contract discussions make clear that many of the provisions Clear Channel now relies upon were inapplicable to on-air statements. (See Decl. of Wyatt Cheek in Opp'n to Clear Channel's Mots. for Summary Judgment, sworn to on Nov. 2, 2007 ("Cheek Decl.") ¶¶ 7-11, 24-28; Torain Decl. ¶¶ 6-7, 13.).  Plaintiff also contends that Clear Channel did not have grounds to terminate Torain for cause based upon the pre-contract statements of John Hogan, Clear Channel's CEO, to Congress as to Clear Channel's indecency policies and procedures. (See Cheek Decl. ¶¶10-12, 14; Torain Decl. ¶¶ 10-13.)

    Section 6 of the Employment Agreement governs the circumstances under which the Employment Agreement, and thus Torain's employment, could be terminated.  Pursuant to the contract, if Torain was terminated without cause, Clear Channel would be obligated to pay Torain's salary and benefits through

4

the date of termination, plus "an amount equal to the remainder
of [Torain's] base salary . . . through and including March 28,
2007 . . . only if [Torain] agrees to and signs a general
release prepared by [Clear Channel]." (Employment Agreement §
6(e).)  However, if the termination was with cause, Torain is
only entitled to unpaid earned base salary and any benefits
earned through the termination date. (Id. § 6(d).)

Section 6(c) of the Employment Agreement defines the
circumstances that can constitute a for cause termination.  The
provisions of Section 6(c) relevant to this dispute include:

> (i) failure, neglect, refusal, or
> nonperformance, at any time, of [Torain's] duties
> or obligations set forth in this Agreement or a
> breach by [Torain] (confirmed in writing) of this
> Agreement, as determined by the Company in its
> sole discretion;
>
> (iii) willful misconduct, or violation of
> any Company policy provided that [Torain] had
> prior written notice (made known to [Torain] on
> the Clear Channel Resource Center Website or
> otherwise);
>
> (iv) an act(s) or failures to act which in
> any manner threatens the qualification of [Clear
> Channel] or its affiliates to maintain a
> broadcast license issued by the FCC, or which
> results in a violation of any rule or regulation
> of the Federal Communications Commissions
> including but not limited to any utterance on the
> air that is obscene, indecent, or profane as
> determined and acknowledged in writing by [Clear
> Channel] or a court, upon review of a ruling from
> the FCC;
>
> (v) making disparaging oral or written
> statements regarding [Clear Channel] or any

5

> affiliated company and including, without
> limitation, its or their officers, shareholders
> or management team, clients, sponsors or
> advertisers, or [Torain] acting in a tortious
> manner toward another employee, listener, client,
> sponsor or advertiser;
>
> (vii) any conduct, on or off duty, which in
> the opinion of [Clear Channel], reflects
> unfavorably upon [Clear Channel] (including any
> radio or television broadcasting station owned or
> operated by [Clear Channel], its parent or
> subsidiary corporations or their advertisers)
> provided [Torain] is aware of such affiliation,
> brings [Torain] into disrepute or causes scandal
> or discredits [Clear Channel];

(Id. § 6(c).)

Also relevant to the instant dispute is Section 7(b) of the

Employment Agreement, which provides:

> [i]f [Clear Channel] has reason to believe
> [Torain] uttered obscene, indecent, or profane
> program content on the air in violation of any
> law or FCC regulation or rule (e.g., without
> limitation, through an FCC Notice of Apparent
> Liability or otherwise), the Company shall, at
> its sole discretion, suspend [Torain] while
> reviewing the program in question. . . .  [Clear
> Channel] may, at its sole discretion, terminate
> [Torain] for cause as set forth in Section 6 if
> the program content was obscene, indecent,
> profane or otherwise in violation of the law, FCC
> regulations, or Company's policy or directives,
> as determined by (i) the Company, or (ii) a court
> upon review of a ruling from the FCC.   The
> Company's policies or directives will be
> communicated to [Torain] in writing, through
> training, or on the Clear Channel Resource Center
> website.

(Id. § 7(b).)    In connection with the contractual

provisions related to the Federal Communications Commission

6

("FCC"), it is undisputed that the FCC issued a letter
dated April 13, 2007 advising Clear Channel that the FCC
was investigating Torain's May 2006 on-air comments. (Pl.'s
Counter 56.1 ¶ XX; Def.'s Reply 56.1 ¶ XX.)  The parties
also agree that the FCC had not issued a Notice of Apparent
Liability, nor did any court issue an opinion that Torain
violated an FCC rule or regulation. (Id. ¶¶ YY, ZZ.)  In
fact, it is now clear that the time has expired for the FCC
to issue a Notice of Apparent Liability. (See Letter from
James P. Cinque, Esq. to Hon. Peter K. Leisure, dated
August, 3, 2009, ("Cinque Letter"), Docket No. 97.)[3]

It is undisputed that, in addition to the Employment
Agreement, Torain was aware of, and received training
concerning, Clear Channel's Responsible Broadcasting
Initiative ("RBI"). (Def.'s 56.1 ¶¶ 11-15; Pl.'s Counter
56.1 ¶¶ 11-15; see also Torain Decl. Ex. C.)[4]  Clear

---

[3] Attached to the Cinque Letter is a Tolling Agreement, entered into by Clear
Channel and the FCC, whereby Clear Channel agreed to toll the statute of
limitations for any potential FCC violation "until two (2) years after the
date on which the Commission grants [Clear Channel's] Renewal Application."
(Cinque Letter Ex. A.)  Because the renewal application was granted on July
5, 2007 (see id. Ex. B), plaintiff contends that the FCC's time to issue a
Notice of Liability has expired, and thus Clear Channel did not have grounds
to terminate Torain's employment. (Id.)  Clear Channel does not dispute that
the FCC's statute of limitations has now expired, but suggests that there
were other grounds for Clear Channel to terminate Torain for Cause, and that
the FCC's investigation is not dispositive of this issue. (See Letter from
Marina C. Tsatlis, Esq. to Hon. Peter K. Leisure, dated August 4, 2009
("Tsatlis Letter"), Docket No. 98.)  Because both parties had an opportunity
to address this issue, the Court will consider the additional facts presented
in the parties' letters in connection with the parties' motions.
[4] The Court notes that Clear Channel filed under seal a very similar version
of the RBI. (See Aff. of Robert Williams in Support of Def. Clear Channel

Channel's RBI explains what is considered "indecent"
material by the FCC, and that "indecent" material can only
be broadcast between 10 p.m. and 6 a.m. - the Safe Harbor
period. (Torain Decl. Ex. C. at 2; Def.'s 56.1 ¶ 13.)  In
particular, the RBI defines indecency as including
"[l]anguage and material that, in context, depicts or
describes, in terms patently offensive as measured by
contemporary community standards for the broadcast medium,
sexual or excretory organs or activities." (Torain Decl.
Ex. C. at 2; Def.'s 56.1 ¶ 14.)  The RBI guides employees
to seek guidance and clarification "over what seems to be
'gray areas'." (Torain Decl. Ex. C. at 5; see also Def.'s
56.1 ¶ 15.)  Finally, according to the RBI, an employee
will not necessarily be immediately terminated after the
FCC issues a Notice of Apparent Liability. (Torain Decl.
Ex. C. at 5.)  Rather, after receiving a Notice of Apparent
Liability, Clear Channel would take the responsible
employee off the air, then perform an investigation into
the circumstances of the statements, and finally provide
additional training to the employee, and/or implement
preventive measures if the program goes back on the air,
and/or "if it concluded that the content violated FCC

Broadcasting, Inc.'s Mots. For Summary Judgment, sworn to on Sept. 27, 2007
("Williams Aff.") Ex. 1.)  Because Clear Channel does not question the
authenticity of the version Torain offers, the Court will rely upon Torain's
version of the RBI for the purposes of resolving these motions.

regulations, the on-air talent or personnel responsible
will be terminated." (Id.)

    In addition to disputing Clear Channel's grounds for
terminating his employment pursuant to the Employment
Agreement, Torain contends that his termination was
improper because his on-air statements about the Caseys in
May 2006 were similar in kind and substance to other
statements Torain had broadcast during his tenure at Clear
Channel, for which he was never reprimanded. (See Pl.'s
Counter 56.1 ¶¶ AAA – UUU; Torain Decl. ¶¶ 33-45.)  In that
vein, Torain details other on-air comments that he
considers similar to the May 2006 statements about the
Caseys, including statements related to the sexuality and
sexual relations of underage children, the promiscuity of
women, and statements of ethnic and racial stereotypes.
(Id.)  Once again, due to the crass nature of these
comments, the Court refrains from quoting the specific
language referenced in the parties' papers.  Clear Channel
does not dispute that Torain made the other on-air
statements, but defendant objects to the relevance and
admissibility of such statements. (See Def.'s Reply 56.1
¶¶ AAA-UUU.)

    Torain also suggests that his termination was improper
because of Clear Channel's ability to "dump" information it

9

considered objectionable before that information aired to
the public. (See Pl.'s Opp'n 22-24.)  In particular, Torain
submits evidence that Clear Channel employed and trained a
"program monitor" who would have time to delete material
that might violate FCC rules before that information went
on the air. (See Pl.'s Counter 56.1 ¶¶ NN – TT; Torain
Decl. ¶¶ 6-9; Cheek Decl. ¶¶ 13-14; Decl. of James P.
Cinque in Opp'n to Clear Channel's Mots. for Summary
Judgment, sworn to on Nov. 2, 2007 ("Cinque Decl.") ¶¶ 10,
16, 31.)  Clear Channel does not dispute that it had the
ability to "dump" material before it aired, or that there
were employees responsible for manning the "dump button"
when Torain made the statements at issue. (See Def.'s Reply
56.1 ¶¶ NN – TT.)  Rather, Clear Channel contends that
plaintiff's assertions are unsupported by admissible
evidence, and are immaterial and irrelevant pursuant to the
Employment Agreement. (Id.)

     Finally, Torain suggests that his termination was
improper because Clear Channel failed to follow the agreed
upon discipline procedure.  Plaintiff relies upon Cheek's
declaration, averring that it was Cheek's "understanding
and agreement with Clear Channel that [he] would be part of
any process concerning disciplining of Torain," and that
Clear Channel "followed this agreed upon procedure until

10

the day it terminated Torain's employment." (Cheek Decl. ¶
23.)   Clear Channel suggests that these facts are
inadmissible and irrelevant to the Court's determination of
the terms of the Employment Agreement. (See Def.'s Reply
56.1 ¶ W.)

## II. Clear Channel's Settlement and Indemnification Claim

Both Clear Channel and Torain have moved for summary
judgment on Clear Channel's counterclaim for indemnification.
Clear Channel contends that, pursuant to the Employment
Agreement, it is entitled to indemnification for the settlement
it paid to the Caseys.   The Employment Agreement provides:

> [Torain] shall indemnify and hold harmless [Clear
> Channel] and any related entity . . . against any
> and all loss, cost, liability, fines, forfeiture,
> damage and expense, occasioned by or in
> connection with any claim, demand, suit,
> proceeding, action or cause of action asserted or
> instituted by any other person, firm, agency,
> court or corporation arising out of or in
> connection with [Torain's] performance of duties
> under this Agreement, or arising out of or in
> connection with [Torain's] conduct outside the
> scope of his . . . employment.

(Employment Agreement § 16(b).)   In support of its claim, Clear
Channel contends that the Caseys "threatened to immediately
commence litigation in the courts of New York against Mr. Torain
and Clear Channel to assert claims for defamation, intentional
infliction of emotional distress, and other torts arising out of
the statements concerning the Caseys that were made on-air by

11

Mr. Torain in early May 2006." (Def.'s Indem. 56.1 ¶ 21; see
Aff. of John Hogan in Support of Def. Clear Channel
Broadcasting, Inc.'s Mots. for Summary Judgment, sworn to on
Sept. 27, 2007 ("Hogan Aff.") ¶ 10.)   Thereafter, Clear Channel
contends that it conducted an investigation of those claims,
including any defenses to those claims and Clear Channel's
potential liability for Torain's on-air statements, and entered
into a reasonable, good faith settlement with the Caseys.[5]
(Def.'s Indem. 56.1 ¶ 22-24; see Hogan Aff. ¶¶ 111-14.)

Torain does not actually dispute that the Caseys threatened
litigation, or that Clear Channel conducted an investigation or
analysis of those claims; rather, Torain suggests that the Court
should disregard those statements because Clear Channel never
produced any complaint, proposed complaint, or documents related
to Clear Channel's investigation, analysis, or settlement
discussions with the Caseys. (Pl.'s Indem. Counter 56.1 ¶¶ 22-
23; Cinque Decl. ¶ 7.)   Torain further contends that Clear
Channel's claim for contractual indemnification must be
dismissed because (i) Clear Channel never gave Torain notice of
the Caseys' claim prior to the alleged settlement, (ii) Torain

---

[5] The Settlement Agreement between Clear Channel and the Caseys was filed
under seal pursuant to the parties' confidentiality order.  Accordingly, the
Court will not refer to the amount of the settlement payment, and will simply
refer to such payment as "the Settlement Payment."  Like the Employment
Agreement, the Court finds that all relevant information from this Settlement
Agreement is sufficiently detailed in the record such that unsealing the
Settlement Agreement is unnecessary.

was never given an opportunity to defend the claims purportedly
raised by the Caseys, (iii) the Caseys never commenced
litigation, (iv) Clear Channel did not establish that it was
liable to the Caseys for the statements made by Torain, and
(v) Clear Channel did not establish that the Caseys sustained
damages in the amount of the settlement.

     In support of these arguments, Torain contends that he
could have asserted a defense of provocation against the Caseys'
claims because of the statements Casey, and his radio partner
"Miss Jones," made about Torain and his mother.  Again, due to
the explicit nature of these comments, the Court will refrain
from directly quoting the comments Casey made about Torain, but
generalizes those comments as concerning Torain's sexuality, his
ability to reproduce, his race, and his mother's activities as a
prostitute. (See Pl.'s Indem. Counter 56.1 ¶ C; Torain Decl. ¶¶
48, 64, Ex. HH.)   Torain also contends that the statements
concerning Gia Casey's past sexual conduct might have been true,
and thus, he would never concede, as Clear Channel did, that
those statements were false. (See Pl.'s Indem. Counter 56.1 ¶¶
14-15; Torain Decl. ¶ 63; Def.'s Indem. 56.1 ¶ 14.)   Finally,
Torain argues that because the Employment Agreement's
indemnification clause does not indemnify Clear Channel for its
own negligent acts, Clear Channel is not entitled to
indemnification in the instant action as Clear Channel was

                                13

negligent in failing to "dump" any material deemed offensive.
(Pl.'s Indem. Counter 56.1 ¶¶ D, E.)

## DISCUSSION

The Court begins by addressing the standards applicable to
summary judgment motions, and determining which state law should
apply to the claims in this case.  The Court then assesses
whether the Employment Agreement allowed Clear Channel to
terminate Torain's employment for cause.  Next, the Court
considers the viability of Torain's claims for breach of the
implied covenant of good faith and fair dealing, and for
violations of New York Labor Law.  Finally, the Court considers
whether the indemnification provision in the Employment
Agreement covers the Caseys' claims, and whether Torain is
obligated to indemnify Clear Channel for its Settlement Payment
to the Caseys.

## I.    **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure allows for
the entry of summary judgment where "the pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to a judgment as a matter of law."
Fed. R. Civ. P. 56(c).  The party moving for summary judgment
bears the "heavy burden" of demonstrating that no genuine issue
as to any material fact exists and that it is therefore entitled

14

to judgment as a matter of law. Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc., 182 F.3d 157, 160 (2d Cir. 1999); accord Atl. Mut. Ins. Co. v. CSX Lines, L.L.C., 432 F.3d 428, 433 (2d Cir. 2005) ("'The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment . . . .'" (quoting Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004))); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994) (Kearse, J.).  Nonetheless, summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

A district court "must resolve all ambiguities and draw all inferences in favor of the non-moving party," such that "[i]f there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 145 (2d Cir. 2002); accord Brown v. Cara, 420 F.3d 148, 152 (2d Cir. 2005) ("We will affirm the District Court's grant of summary judgment to defendants only if, based on facts not in genuine dispute and drawing all inferences in favor of plaintiffs, defendants are

entitled to judgment on the merits as a matter of law.").  Of
course, "'the mere existence of some alleged factual dispute
between the parties will not defeat an otherwise properly
supported motion for summary judgment; the requirement is that
there be no *genuine* issue of *material* fact.'" Lang v. Ret.
Living Publ'g Co., 949 F.2d 576, 580 (2d Cir. 1991) (quoting
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).
"A dispute as to a material fact is 'genuine,' and hence summary
judgment is not appropriate, under this standard, only 'if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at
248); accord N.Y. Stock Exch., Inc. v. New York, N.Y. Hotel LLC,
293 F.3d 550, 554 (2d Cir. 2002).  "[T]he law provides no
magical talisman or compass that will serve as an unerring guide
to determine when a material issue of fact is presented.  As is
so often true in the law, this is a matter of informed and
properly reasoned judgment." Am. Mfrs. Mut. Ins. Co. v. Am.
Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279 (2d
Cir. 1967).

## II.  Choice of Law

Choice of law is the first issue the Court must address.
Arkwright-Boston Mfrs. Ins. Co. v. Calvert Fire Ins. Co., 887
F.2d 437, 439 (2d Cir. 1989) (Winter, J.).

As a general matter, a district court sitting in diversity

jurisdiction applies the choice-of-law rules of the state in
which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313
U.S. 487, 496 (1941); Lee v. Bankers Trust Co., 166 F.3d 540,
545 (2d Cir. 1999) (McLaughlin, J.).   Thus, New York law will
apply for purposes of determining which state's substantive law
will govern the claims in this case. Wall v. CSX Transp., Inc.,
471 F.3d 410, 415 (2d Cir. 2006).   Here, the Employment
Agreement contains a choice-of-law provision that provides for
the application of Texas law,[6] and "[a]s a general rule, choice
of law provisions . . . are valid and enforceable in [New
York]." Terwilliger v. Terwilliger, 206 F.3d 240, 245 (2d Cir.
2000) (quoting Marine Midland Bank, N.A. v. United Mo. Bank,
N.A., 223 A.D.2d 119, 643 N.Y.S.2d 528, 530 (N.Y. App. Div.
1996)) (internal quotation marks removed); Village on Canon v.
Bankers Trust Co., 920 F. Supp. 520, 526 (S.D.N.Y. 1996)
("Choice of law clauses in loan documents and contracts are
generally honored in New York." (citations omitted)); Freedman
v. Chem. Constr. Corp., 43 N.Y.2d 260, 265 n. *, 372 N.E.2d 12,
15 n. * (N.Y. 1977) ("As a general matter, the parties'
manifested intentions to have an agreement governed by the law

---

[6] The Employment Agreement provides, "[u]nless otherwise specified or required
by statute in a particular jurisdiction which expressly pertains to an
employment relationship (e.g., wage payment timing, tax withholding, etc.),
all construction and interpretation of this Agreement shall be governed by
and construed in accordance with the laws of the State of Texas, without
giving effect to principles of conflicts of law." (Employment Agreement §
18(a).)

17

of a particular jurisdiction are honored." (citation omitted)).

Moreover, "New York law is clear in cases involving a contract with an express choice-of-law provision:  Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines, 230 F.3d 549, 556 (2d Cir. 2000) (citation omitted); accord MSF Holding Ltd. v. Fiduciary Trust Co. Int'l, 435 F. Supp. 2d 285, 293 (S.D.N.Y. 2006) (Leisure, J.) (same), aff'd 234 F. App'x 827 (2d Cir. 2007); see also Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam) ("[A]lthough, New York courts generally defer to the choice of law made by the parties to a contract . . . New York law allows a court to disregard the parties' choice when the most significant contacts with the matter in dispute are in another state." (internal quotations and citations removed)).

Here, relevant considerations weigh in favor of interpreting the provisions of the Employment Agreement under Texas law:  Clear Channel maintains its principal place of business in Texas and the agreement specifies that Texas is the forum of choice, which create sufficient contacts with Texas; based on the record, there is no basis to conclude that application of Texas law would perpetuate any fraud or violate

18

public policy.  Thus, this Court will apply Texas substantive
law to determine whether Torain was discharged for cause under
the terms of the Employment Agreement, and whether Clear Channel
is entitled to indemnification for the Settlement Payment.
Moreover, because Torain's claim for breach of the implied
covenant of good faith and fair dealing arises out of the
Employment Agreement, that claim is also governed by Texas law.
See Comprehensive Habilitation Servs., Inc. v. Commerce Funding
Corp., No. 05 Civ. 9640, 2009 U.S. Dist. LEXIS 30386, at *32
n.14 (S.D.N.Y. Apr. 6, 2001) (Leisure, J.) (explaining that
"[b]ecause breach of the implied covenant of good faith and fair
dealing is a contractual cause of action, and the choice of law
provision applies to the interpretation and enforcement of the
contract," the law of the forum specified in the choice-of-law
provision applies to the implied covenant claim); Butvin v.
Doubleclick, Inc., No. 99 Civ 4727, 2001 U.S. Dist. LEXIS 2318,
at *23 (S.D.N.Y. March 5, 2001) (Keenan, J.) (explaining that
Delaware choice-of-law provision in contract also applies to
implied covenant claim as "the implied covenant of good faith is
a rule of interpretation rather than a separate obligation"
(internal citations and quotations omitted)).

### III. Clear Channel's Contractual Right To Terminate Plaintiff Pursuant to the Employment Agreement

#### a. Texas Contract Law

When faced with a motion for summary judgment in a contract dispute, the Court must first determine if the contract is unambiguous.  In making this crucial assessment, the Court's primary goal is to give effect to the parties' agreement as expressed in the written instrument. Amigo Broad., LP v. Spanish Broad. Sys., Inc., 521 F.3d 472, 480 (5th Cir. 2008) (explaining that under Texas law "'the court's primary concern is to enforce the parties' intent as contractually expressed, and an unambiguous contract will be enforced as written'" (quoted reference omitted)); Dell Computer Corp. v. Rodriguez, 390 F.3d 377, 388 (5th Cir. 2004) (explaining that pursuant to well-settled Texas law on contract construction, "'[t]he primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument'" (quoted reference omitted)); Valley Reg'l Med. Ctr. v. Wright, 276 F. Supp. 2d 620, 627 (S.D. Tex. 2001) ("According to the rules of construction, the primary concern is to ascertain and to give effect [to] the intentions of the parties as expressed in the instrument." (citing Lenape Res. Corp. v. Tennessee Gas Pipeline Co., 925 S.W.2d 565, 574, 39 Tex. Sup. Ct. J. 496 (Tex. 1996))).

20

If the terms of the contract can be given a definite meaning, they are not ambiguous. Texas v. Am. Tobacco Co., 463 F.3d 399, 407 (5th Cir. 2006); Dell, 390 F.3d at 388.  A contract is not ambiguous merely because the parties advance conflicting interpretations of a contractual provision, unless there are two or more reasonable interpretations of that provision. Universal Health Servs., Inc. v. Renaissance Women's Group, P.A., 121 S.W.3d 742, 746, 47 Tex. Sup. Ct. J. 20 (Tex. 2003).  Similarly, if there is only one reasonable interpretation of a contract, that contract is not ambiguous simply because the parties dispute which contract provision governs the pending controversy. Valley Reg'l, 276 F. Supp. 2d at 628 (holding as a matter of law that contract was not ambiguous as to which provision should apply to the dispute because contract was subject to only one reasonable interpretation).  "'Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered.'" Am. Tobacco, 463 F.3d at 407 (quoting Coker v. Coker, 650 S.W.2d 391, 394, 26 Tex. Sup. Ct. J. 368 (Tex. 1983)).

"Courts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." Id. at 407.  Accordingly,

21

"'[p]arol evidence is not admissible for the purpose of creating an ambiguity.'" Dell, 390 F.3d at 388 (quoted reference omitted). "[T]he Texas parol evidence rule – a rule of substantive law and not merely of evidence – bars resort to evidence of the intent of the parties where the language of the agreement is clear." United States v. Vahlco Corp., 720 F.2d 885, 891 (5th Cir. 1983); see Cox v. Bell Helicopter Int'l, 425 F. Supp. 99, 103 (N.D. Tex. 1977) ("Under Texas law, the parol evidence rule excludes evidence of prior or contemporaneous negotiations and representations that are introduced to vary, add to, or contradict, the terms of a valid written instrument, which is presumed by the rule to embody the complete agreement of the parties."). "'Only after a contract is found to be ambiguous may parol evidence be admitted for the purpose of ascertaining the true intentions of the parties expressed in the contract.'" Am. Tobacco, 463 F.3d at 407 (quoted reference omitted).[7]

---

[7] In construing the Employment Agreement, plaintiff asks this Court to interpret the agreement against its drafter, Clear Channel. (Pl.'s Opp'n 13.) The doctrine of construing a contract strictly against the drafter of the agreement – the doctrine of contra proferentem – is applied only when construing an ambiguous contract. Lewis v. Vitol, S.A., No. 01-05-00367-Cv, 2006 Tex. App. LEXIS 5645, at *10 (Tex. App. June 29, 2006) (explaining that the court would only construe an employment agreement against the employer, the drafter, if there was an ambiguous contract). Because this Court finds the Employment Agreement to be unambiguous, the Court has no reason to construe the agreement against Clear Channel.

### b. <u>Application of Texas Contract Law</u>

Here, the parties dispute whether the Employment Agreement allowed Clear Channel to terminate Torain for cause based upon Torain's on-air statements in early May 2006.  Specifically, the parties disagree as to which provisions in the contract govern the question of Torain's termination, and they further dispute what the contract provisions actually mean.

Clear Channel contends that it had six separate and independent grounds under which it could terminate Torain for Cause. (Def.'s Mem. 17.)  The Court will take each provision in turn.[8]

#### 1. Section 7(b) and Section 6(c)(iv)

First, Clear Channel argues that Torain's on-air statements about the Caseys violated the RBI and, therefore, in its sole discretion, Clear Channel was entitled to terminate Torain pursuant to Section 7(b) of the Employment Agreement. (Def.'s Mem. 17-18.)  By contrast, Torain contends that because Clear Channel only cited Section 6(c) of the Employment Agreement as grounds for termination in Torain's termination letter (see Todd Decl. Ex. E), Clear Channel cannot now rely upon Section 7(b) to

---

[8] Torain contends that the only provision relevant to determining if Clear Channel had grounds to terminate Torain for cause is Section 6(c)(iv) of the Employment Agreement, as that is the only provision that governs terminations for statements that are broadcast. (Pl.'s Opp'n 14-20; Cheek Decl. ¶¶ 7-11, 24-28; Torain Decl. ¶¶ 6-7, 13.)  However, the Court must look at each of the provisions Clear Channel cites to determine whether those sections have a clear and unambiguous meaning, and, if so, whether that clear meaning covers the behavior in question.

23

justify the termination. (Pl.'s Opp'n 10-11 (citing <u>Measday v.</u>
<u>Kwik-Kopy Corp.</u>, 714 F.2d 118, 125-26 (5th Cir. 1983).)  Torain
further contends that even if Clear Channel could invoke Section
7(b), the RBI, the parties' pre-contract discussions, and
Hogan's testimony before Congress make clear that termination
could only occur after an FCC Notice of Apparent Liability and a
court adjudication of the FCC's ruling. (<u>Id.</u> at 12-13; Torain
Decl. ¶¶ 6-7, 11-13; Cheek Decl. ¶¶ 8-9, 11-12, 24-25.)

        While Torain correctly points out that, under Texas law,
an employer cannot offer a different justification for
terminating an employee during litigation from the explanation
first offered, here, Section 7(b) specifies that Clear Channel
"<u>may, at its sole discretion, terminate [Torain] for cause as</u>
<u>set forth in Section 6</u>." (Employment Agreement § 7(b) (emphasis
added).)  Accordingly, while Section 7(b) might not be a proper,
independent justification for Torain's termination, Torain's
assertion that this section has no application to this dispute
is erroneous. (<u>See</u> Pl.'s Opp'n 11.)  As Section 7(b)
specifically cites Section 6(c) – the provision both parties ask
this Court to construe – the Court cannot disregard Section 7(b)
in its analysis, but must read these provisions together.  In
other words, this Court must examine the entire contract to
ensure that the Court gives effect to the parties' intent and
the contract as a whole. <u>See</u> <u>Amigo Broad.</u>, 521 F.3d at 481-82

24

(interpreting all provisions of employment agreement to "best give effect to the 'entire writing' and [to] best harmonize[] 'all the provisions of the contract'" (citing Coker, 650 S.W.2d at 393)); Lewis, 2006 Tex. App. LEXIS 5645, at *10 (explaining that the court must "consider the entire writing in an effort to harmonize and to give effect to all of the provisions of the contract so that none will be rendered meaningless . . . all provisions must be considered with reference to the whole instrument" (citing Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133-34, 37 Tex. Sup. J. 345 (Tex. 1994))).

Section 7(b) makes clear that Clear Channel reserved the right to terminate Torain if "the program content was obscene, indecent, profane or otherwise in violation of the law, FCC regulations, or [Clear Channel's] policies or directives, as determined by (i) [Clear Channel], or (ii) a court upon review of a ruling from the FCC." (Employment Agreement § 7(b).)   By phrasing this provision in the alternative, the contract unambiguously allows Clear Channel or a court to determine whether questioned program content is obscene, indecent, or profane.   Similarly, Section 6(c)(iv) allows Clear Channel, or a court, to determine that an on-air utterance is obscene, indecent, or profane.   (Id. § 6(c)(iv).)[9]

---

[9] Section 6(c)(iv) discusses "any utterance on the air that is obscene, indecent, or profane as determined and acknowledge in writing by [Clear Channel] or a court, upon review of a ruling from the FCC." (Employment

Moreover, the RBI does not alter this Court's conclusion that an FCC determination, as approved by a court, is not a prerequisite to termination under the Employment Agreement. Instead, the language in the RBI illustrates the types of statements that Clear Channel might consider indecent, including "[l]anguage and material that, in context, depicts or describes, in terms patently offensive as measured by contemporary community standards for the broadcast medium, sexual or excretory organs or activities." (Torain. Decl. Ex. C. at 2.) Torain suggests that the RBI makes clear that an indecency complaint, *i.e.* a Notice of Apparent Liability, is final only if an order has been entered by a court. (See Pl.'s Opp'n 14-17.) However, neither Sections 6(c)(iv) nor 7(b) is limited to situations where the FCC issued a Notice of Liability. Rather, separate and apart from any Notice of Apparent Liability or other FCC action, the contractual provisions allowed Clear

---

Agreement § 6(c)(iv).) Torain contends that because of the comma setting off "upon review of a ruling from the FCC," pursuant to the rules of grammatical construction, the FCC ruling is a condition precedent to termination. (Pl.'s Opp'n 17-18.) "In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." Valley Reg'l, 276 F. Supp. 2d at 628 (citing Criswell v. European Crossroads Shopping Ctr., Ltd., 792 S.W.2d 945, 948, 33 Tex. Sup. Ct. J. 598 (Tex. 1990)). Moreover, courts are reluctant to impose condition to a contract. Id. at 629. Here, Section 7(b), which uses similar language to Section 6(c)(iv), indicates that a court must review an FCC ruling, but does not tie Clear Channel's determination of obscene, indecent, or profane content to an FCC or court determination. Thus, because the Court must harmonize contract provisions, Section 6(c)(iv) must be read in the same manner as Section 7(b), and the FCC ruling is not a condition precedent to defendant's determination. Moreover, Torain's proposed reading of the contract is unreasonable, as it would suggest that Clear Channel had the authority to "review" a ruling from the FCC.

Channel to terminate Torain for cause based upon its own determination that Torain made obscene, indecent, or profane statements, which could jeopardize Clear Channel's broadcast license or cause FCC liability. (See Employment Agreement § 6(c)(iv).)  Thus, even though the FCC did not, and, it now appears, cannot, issue a determination as to Torain's May 2006 statements (Cinque Letter Ex. A), Clear Channel can still invoke Section 6(c)(iv) of the Employment Agreement in the instant dispute.

Because Sections 7(b) and 6(c)(iv) of the Employment Agreement unambiguously provide Clear Channel with the authority to terminate Torain based upon Clear Channel's own determination that his on-air statements were obscene, indecent, or profane, this Court is precluded from considering parol evidence, including Hogan's testimony before Congress and the contract negotiations between Clear Channel and Cheek. See Am. Tobacco, 463 F.3d at 407 (explaining that parol evidence cannot create an ambiguity in a contract); Dell, 390 F.3d at 388 (same); Cox, 425 F. Supp. at 103 (excluding "testimony concerning an alleged oral agreement entered into prior to the written agreement to vary, add to, or contradict the terms of the written agreement of the parties"); NHA, Inc. v. Jones, 500 S.W.2d 940, 949-50 (Tex. Civ. App. 1973) (rejecting evidence of pre-contract oral agreement that there was no company personal appearance code and that

employee could keep a beard or mustache, as that parol evidence
violated the written company policy, pursuant to which employee
was terminated).   Accordingly, because it is undisputed that
Robert Williams, President and Market Manager for Clear Channel
Radio's Power 105.1 radio station,[10] determined that Torain's May
2006 statements were potentially indecent and violated company
policy and directives, the Court finds that Clear Channel's
decision to terminate Torain for cause is consistent with
Sections 6(c)(iv) and 7(b) of the Employment Agreement. (See
Williams Aff. ¶¶ 1, 3, 5.)

### 2. Section 6(c)(vii)

Second, Clear Channel argues that it had grounds to
terminate Torain pursuant to Section 6(c)(vii) of the Employment
Agreement as Clear Channel determined that Torain's on-air
comments reflected unfavorably on Clear Channel, brought Torain
into disrepute, and caused scandal.[11] (Def.'s Mem. 18-19.)

---

[10] Torain contends that Williams did not have "any expertise" to decide on May
10, 2006 whether Torain's comments violated the RBI or FCC rules and
regulations. (Cheek Decl. ¶ 26.)  However, the Employment Agreement does not
demand a particular skill set, or a particular individual, in order to make
the requisite determination about termination for cause.  Accordingly, this
argument is without merit.

[11] In support of its argument that Torain's on-air statements reflected
unfavorably on the company, Clear Channel asks this Court to take judicial
notice of newspaper articles, "as they provide a sampling of the pervasive
media coverage stemming from Plaintiff's on-air comments regarding Raashaun
Casey." (Def. Clear Channel Broadcasting, Inc.'s Request for Judicial Notice
in Support of its Mot. for Summary Judgment of Pl. Troi Torain's Compl.,
dated Sept. 28, 2007, 2.)  Torain opposes Clear Channel's request, contending
that the articles are irrelevant, as they appeared in the days after
plaintiff's termination. (Pl. Troi Torain's Opp'n to Def. Clear Channel's
Request for Judicial Notice, dated November 2, 2007, ¶ 1.)  The Court agrees
with plaintiff and concludes that because the proffered articles all post-

Torain does not specifically address Section 6(c)(vii) in his
opposition papers, arguing instead that Section 6(c)(iv) is the
exclusive basis upon which Clear Channel could have terminated
Torain for his on-air statements. (See Pl.'s Opp'n 14-18.)
Nevertheless, in his opposition to Clear Channel's statement of
undisputed material facts, Torain contends that "[t]he word
'conduct' in subparagraph 6(c)(vii) refers to actions, and not
statements made on the air." (Pl.'s Counter 56.1 ¶ 9 (citing
Cheek Decl. ¶ 26).)   The Court concludes that the only
reasonable interpretation of the term "conduct" in Section
6(c)(vii) encompasses statements made on the air, and cannot be
limited to physical actions.   It strains the English language to
exclude statements or words from "conduct," and thus Torain
fails to offer a reasonable reading of Section 6(c)(vii) of the
Employment Agreement.   Cheek might have believed that there are
only two "for cause" termination provisions that cover on-air
statements. (See Cheek Decl. ¶ 26 (explaining that, other than
Section 6(c)(iv) of the Employment Agreement, "the provisions
referred to by Clear Channel in its motion were not meant to
apply to on-air statements . . . subparagraph (vii) relates to

----

date Clear Channel's termination of Torain, they could not demonstrate that
on May 10, 2006, when Torain was terminated, Clear Channel believed that
Torain's conduct reflected unfavorably on the company, or demonstrated that
Torain was held in disrepute, which is the relevant inquiry under Section
6(c)(vii) of the Employment Agreement.  Accordingly, this Court declines to
determine whether the proffered articles would otherwise be appropriate for
judicial notice, and the Court denies Clear Channel's request for judicial
notice.

'conduct' (actions, not words) which 'brings employee into
disrepute or causes scandal or discredits company' – i.e., an
act other than a statement made on air").)   However, Cheek's
pre-contract understanding of the agreement cannot contradict
the clear, unambiguous language used in the written contract.
See Cox, 425 F. Supp. at 103; NHA, 500 S.W.2d at 949-50.

3. Section 6(c)(iii)

Third, Clear Channel contends that because Torain's on-air
statements violated Clear Channel's company policy, Clear
Channel had grounds to terminate Torain for cause pursuant to
Section 6(c)(iii) of the Employment Agreement. (Def.'s Mem. 19.)
Specifically, Clear Channel asserts that Torain knew of the
company policy, as stated in the RBI, that prohibits the
broadcasting of indecent statements, like those Torain made in
May 2006, outside the Safe Harbor timeframe of 10 p.m. to 6 a.m.
(Id.)

It is undisputed that the RBI provides that indecent
material can only be broadcast during the Safe Harbor hours of
10 p.m. to 6 a.m. (See Torain Decl. Ex. C. at 2, 5.)   It is also
undisputed that Torain knew about this policy. (See Def.'s 56.1
¶ 12.)   Because Torain made statements that, if ever properly
made, could only have been broadcast during the Safe Harbor
periods, Torain violated a communicated company policy, which

30

gives rise to a for cause termination under Section 6(c)(iii) of the Employment Agreement.[12]

### 4. Section 6(c)(v)

Fourth, Clear Channel contends that Torain's statements concerning Gia Casey constituted tortious conduct toward a listener, and thus gave Clear Channel grounds to terminate Torain pursuant to Section 6(c)(v) of the Employment Agreement. (Def.'s Mem. 20 - 21.)  In particular, Clear Channel asserts that Torain's comments about Gia Casey's sexual behavior were defamatory per se, and that Torain's comments regarding the Caseys' daughter caused Gia Casey to suffer emotional distress. (Id. at 20.)  Accordingly, as Gia Casey was a "listener" to these comments, and defamation and intentional infliction of emotional distress are torts, Clear Channel contends that it had grounds to terminate Torain. (Id. at 20-21.)

Torain does not address this provision in his memorandum of law in opposition to Clear Channel's motion.  He does assert that the phrase "tortious manner" was meant to apply to a physical confrontation, and that it was implausible that Gia

---

[12] Clear Channel also asserts that because Torain intended to make the on-air statements about the Caseys, he committed willful misconduct in violation of his Employment Agreement. (Def.'s Mem. 19.)  Viewing the evidence in the light most favorable to Torain, the non-moving party, this Court concludes that the fact that Torain intended to make the statements on-air merely suggests that the statements were not accidentally or inadvertently aired, but it does not demonstrate that Torain engaged in willful misconduct. However, because Section 6(c)(iii) requires a violation of a company policy or willful misconduct, Clear Channel can still rely upon Section 6(c)(iii) in support of its contention that it had cause to terminate Torain.

Casey was a "listener," since her husband's radio show aired at
the same time as Torain's program. (Pl.'s Counter 56.1 ¶ 8;
Cheek Decl. ¶ 26; Torain Decl. ¶ 62.)

First, Torain's contention that Gia Casey was not a
"listener" because it is unbelievable that she would listen to
Torain at the same time as her husband's radio show aired is
unavailing.  Torain cannot create a question of fact based upon
his conclusory assertion that the sworn statement in Gia Casey's
affidavit is not credible. See Island Software & Computer Serv.,
Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005)
("Broad, conclusory attacks on the credibility of a witness will
not, by themselves, present questions of material fact.").

Moreover, and more significantly, the Court finds Torain's
reading of this provision of the contract unreasonable as a
matter of law.  The term "tortious" means "[c]onstituting a
tort; wrongful," or "[i]n the nature of a tort." Black's Law
Dictionary 1497 (7th Ed. 1999).  As such, acting in any way that
is in the nature of a tort is to act in a "tortious manner."  It
is indisputable that torts are not limited to physical
confrontations, and that torts include non-physical wrongs such
as defamation and intentional infliction of emotional distress.
Accordingly, the only reasonable reading of Section 6(c)(v) of
the Employment Agreement, which allows Clear Channel to
terminate Torain for cause for "acting in a tortious manner

toward another employee, listener, client, sponsor or
advertiser," is that any act that could constitute a tort
against one of those listed individuals is grounds for
termination for cause.  As described in great detail below, the
Court concludes that Torain's May 2006 on-air statements could
have given rise to liability for defamation and intentional
infliction of emotional distress, and, thus, Clear Channel's
decision to terminate plaintiff was consistent with Section
6(c)(v) of the Employment Agreement.

### 5. Section 6(c)(i)

Clear Channel relies upon Section 6(c)(i) of the Employment
Agreement for its fifth and sixth justifications for terminating
Torain's employment for cause.  First, Clear Channel contends
that Torain's violation of the RBI constituted a "failure,
neglect, refusal, or nonperformance . . of [Torain's]
obligations" set forth in the Employment Agreement. (Def.'s Mem.
21 (citing Employment Agreement § 6(c)(i)).)  Amongst his duties
under the contract, Torain was required to perform or furnish
program materials "in accordance with the standards, policies
and directions of [Clear Channel]." (Employment Agreement §
4(a).)  Therefore, given the unambiguous language of this first
clause of Section 6(c)(i) of the Employment Agreement, the Court
concludes that Clear Channel had grounds to terminate Torain as
his May 2006 broadcasts violated the RBI, as discussed above.

Second, Clear Channel contends that by broadcasting content that is prohibited by Clear Channel, Torain failed to comply with Clear Channel's standards, policies and directions, and thus, Torain breached the Employment Agreement, which, pursuant to Section 6(c)(i), is a ground for termination for cause. (Def.'s Mem. at 21-22.)   However, Section 6(c)(i) also requires that any breach of the Employment Agreement must be confirmed in writing.   (Employment Agreement § 6(c)(i).)   The Court rejects Clear Channel's contention that it confirmed this breach in writing (Def.'s Mem. at 22; Def.'s 56.1 ¶ 44.)   While it is clear that Clear Channel sent Torain a written termination letter, that letter did not specify that Torain breached the Employment Agreement. (Todd. Decl. Ex. E.)   Accordingly, the Court rejects this justification for Torain's termination.

In sum, the Court concludes that Clear Channel did not breach the Employment Agreement by terminating Torain for his on-air statements concerning the Caseys, as the clear and unambiguous terms of Sections 6(c)(i), 6(c)(iii), 6(c)(iv) (in connection with Section 7(b)), 6(c)(v), and 6(c)(vii) of the Employment Agreement provided Clear Channel with the necessary discretion and authority to terminate Torain for cause. Accordingly, while the Court acknowledges that Torain believed, based on pre-contract discussions, that the Employment Agreement provided him with greater protections, such that he would not be

34

disciplined or terminated for on-air statements like those made
about the Caseys, he failed to ensure that those protections
were actually included in the Employment Agreement.   Likewise,
plaintiff's suggestion that Clear Channel was obligated to
include Torain's manager in any disciplinary actions (see Cheek
Decl. ¶¶ 18-23), is unavailing as such procedures are entirely
absent from the Employment Agreement.  Plaintiff cannot
contradict the clear written terms of his contract with his pre-
contract oral understanding of the parties' agreement. See Am.
Tobacco, 463 F.3d at 407; Vahlco, 720 F.2d at 891; Cox, 425 F.
Supp. at 103.   The Court will not add terms to the Employment
Agreement to provide plaintiff with additional protections that
Torain failed to make part of the written agreement. See Gilbane
Bldg. Co. v. Keystone Structural Concrete, Ltd., 263 S.W.3d 291,
299 (Tex. App. 2007) (declining to add provisions to the
contract as "[p]arties should be held to the contract they
drafted"); In re Godt, 28 S.W.3d 732, 736 (Tex. App. 2000) ("In
interpreting a contract, the ultimate restraint is that a court
cannot, through the construction process, make a new contract
for the parties, one they did not make."). Thus, the remaining
issue for this Court to address is whether Clear Channel waived
or condoned Torain's behavior such that Clear Channel is now
precluded from enforcing the terms of the contract and
terminating Torain.

### c. **Plaintiff's Defenses to Clear Channel's Contractual Rights to Terminate Torain for Cause**

Torain proffers several arguments as to why, even if Clear Channel would have had the right to terminate Torain for cause under the Employment Agreement, Clear Channel relinquished that right through its actions. First, Torain contends that, even if Clear Channel had the contractual right to terminate Torain's employment for his May 2006 on-air statements, "since Clear Channel had condoned such statements throughout the course of Torain's employment, Clear Channel was obligated to put Torain on notice that it would no loner permit him to say such things on the air." (Pl.'s Opp'n 8-9.) Second, Torain contends that, because Clear Channel indicates that it could be held vicariously liable for Torain's statement to the Caseys, Clear Channel admitted that it "authorized, participated in, consented or ratified" Torain's conduct, thereby precluding Clear Channel from asserting that it properly terminated Torain's employment. (Id. at 10.) Finally, Torain contends that Clear Channel was "at least as equally responsible, if not more so, for the airing of Torain's statements [so] it cannot use them as the basis for obtaining any relief" under the doctrine of in pari delicto. (Id. at 22-24.)

At the outset, the Court notes that waiver is generally an affirmative defense, such that a defendant in a breach of

contract action asserts the defense in an effort to shield itself from liability for a breach of contract claim, and that defendant must establish conclusively each element of the defense. See FDIC, v. Attayi, 745 S.W.2d 939, 946 (Tex. App. 1988) (explaining that defendant must establish conclusively all the essential elements of a waiver affirmative defense); see also Fed. R. Civ. P. 8(c)(i) (listing "waiver" as an affirmative defense that a party must state in a responsive pleading).  By contrast, in the instant case, it is Torain, the plaintiff, who argues that he is entitled to breach of contract damages because Clear Channel, the defendant, waived its right to terminate him pursuant to the Employment Agreement.  Despite this procedural distinction, even if the Court applies the waiver doctrine to the instant dispute, Torain's argument fails as a matter of law.[13]

"Waiver is the voluntary or intentional relinquishment of a known right, or intentional conduct inconsistent with claiming such a right." Witt v. Countrywide Home Loans, Inc., No. 3:06-CV-1384-D, 2007 U.S. Dist. LEXIS 58688, at *10 (N.D. Tex. Aug. 10, 2007) (citations omitted); accord Horton v. DaimlerChrysler Fin. Servs. Ams., L.L.C., 262 S.W.3d 1 (Tex. App. 2008) (citing

---

[13] The Court notes that while the question of waiver is often a fact issue, where, as here, "[t]he parties do not dispute the facts, but rather, whether the facts establish . . .  [a] waive[r]," the Court can determine the issue on summary judgment. Manley v. Hanford Dev., Inc., No. SA-06-CA-1082, 2008 U.S. Dist. LEXIS 71288, at *13 (W.D. Tex. July 16, 2008 ), aff'd, No. 08-50868, 2009 U.S. App. LEXIS 9490 (5th Cir. May 1, 2009).

United States Fid. & Guar. Co. v. Bimco Iron & Metal Corp., 464
S.W.2d 353, 357 (Tex. 1971)).  "[A] party can waive contractual
provisions that are in the contract for the party's benefit,
provided there is an intentional relinquishment of that right."
Witt, 2007 U.S. Dist. LEXIS 58688, at *10.  Accordingly,
"[i]ntent is the key element in establishing waiver."  Attayi,
745 S.W.2d at 947.

     Here, no reasonable trier of fact can conclude that,
because Clear Channel declined to discipline Torain in the past
for making similar on-air comments to those made in May 2006,
Clear Channel manifested its intent to relinquish its right to
terminate Torain for on-air statements that it believed rose to
the level of a terminable offense.  While Torain's previous on-
air statements do appear similar in kind to those made about the
Caseys, none of the other comments were directed at the Caseys,
none of the other comments were directed at a four year-old
child, and none of the other comments received the public
attention that the May 2006 comments received.  The Employment
Agreement empowered Clear Channel to determine whether a
statement violated a company policy, was obscene or indecent,
constituted tortious activity against a listener, or reflected
poorly on Clear Channel or Torain. (See Employment Agreement §§
6(c)(i), (iii), (v), (vii).)  Inherent in this power is Clear
Channel's right to determine that some statements crossed the

line, and fell within the enumerated grounds of Section 6(c),
while other statements were acceptable.  Even if Clear Channel
allowed, and even encouraged, Torain's previous statements,
Torain fails to raise a question of fact as to Clear Channel's
intent to waive its right to terminate Torain under any
circumstances.  Thus, this waiver defense fails as a matter of
law.[14]

Similarly, the Court is not persuaded by Torain's argument
that Clear Channel is precluded from enforcing the contract's
termination provisions because it conceded that it could or
would be vicariously liable for Torain's statements to the
Caseys. (Pl.'s Opp'n 9-10.)  According to plaintiff, by
admitting that Clear Channel could be vicariously liable for
Torain's statements, it implicitly authorized those statements,
and is now precluded from arguing that the statements were
grounds for termination. (Id.)  However, the cases plaintiff
cites in his memorandum of law flatly contradict this argument.
The case law makes clear that an employer can be held
vicariously liable for the acts of its employees, even if those
acts violated corporate policy or were otherwise wrongful, so

[14] The case law that Torain relies upon in support of his waiver argument is
distinguishable from the case at bar. (Pl.'s Opp'n 7-9.)  In those cases the
issue was whether by accepting late payment or late performance under a
contract, the party waived the right to later claim breach of contract for
the same behavior of submitting late payment or performance.  By contrast,
here, Clear Channel terminated Torain shortly after he made the on-air
statements about the Caseys.  Clear Channel's past practice of allowing
Torain to make certain similar statements on air did not foreclose its right
to terminate Torain for different, albeit similar, on-air statements.

long as those acts were within the scope of the employment. <u>See</u>
<u>Hooper v. Pitney Bowes, Inc.</u>, 895 S.W.2d 773, 776, 777 (Tex.
App. 1995) (explaining that an "employer is liable for the act
of his employee, [including defamation,] even if the specific
act is unauthorized or contrary to express orders, so long as
the act is done while the employee is acting within his general
authority and for the benefit of the employer" and that
"[n]either express authorization nor subsequent ratification is
necessary to establish liability"); <u>see also</u> <u>Carlton v. Steele</u>,
278 F. App'x 352, 353 (5th Cir. 2008) (explaining that under
Texas law "[a]s [the] employer, [defendant] many be held
vicariously liable for any slanderous statements made by [the
employee.]").[15]  Torain does not suggest that Torain's on-air
statements during his radio show were outside the scope of his
employment, and therefore, Clear Channel's admission that it
could be held vicariously liable for Torain's comments in no way

---

[15] The Court looks to Texas law on this point, as Torain asserts these
arguments in support of his contractual claims, which, as explained above,
are governed by Texas law.  Nevertheless, even if this Court looked to New
York law, since any claim pursued by the Caseys would have been analyzed
under New York law, as discussed more fully below, Torain's argument is
equally fruitless under New York law, as evident by the case plaintiff cited
in his own brief. <u>See</u> <u>Loughry v. Lincoln First Bank, N.A.</u>, 67 N.Y.2d 369,
377-78, 494 N.E.2d 70, 74 (N.Y. 1986) (explaining that while an employer's
liability for punitive damages for the acts of an employee is limited to
situations where management authorized the employee's wrongful behavior,
"liability for compensatory damages is properly placed on an innocent
employer for slander by its agents committed in the course of employment");
<u>see also</u> <u>Judith M. v. Sisters of Charity Hosp.</u>, 93 N.Y.2d 932, 933, 715
N.E.2d 95, 96 (N.Y. 1999) ("Pursuant to [the doctrine of respondeat
superior], the employer may be liable when the employee acts negligently or
intentionally, so long as the tortious conduct is generally foreseeable and a
natural incident of the employment.).

suggests that Clear Channel authorized, participated in, consented to, or ratified Torain's conduct.

Finally, the doctrine of in pari delicto is entirely inapplicable to a determination of whether Torain's statement can constitute grounds for termination under the Employment Agreement.  As made clear by the cases cited in plaintiff's opposition papers, the doctrine acts as a bar to a plaintiff's recovery if that plaintiff was at equal fault, or engaged in similar wrongdoing, as the defendant. (Pl.'s Opp'n 23-24.) Here, however, it is Torain, and not Clear Channel, seeking damages, and, thus, the doctrine has no application to the determination of Clear Channel's motion for summary judgment on plaintiff's complaint.

Because Torain cannot establish that Clear Channel breached the terms of the Employment Agreement by terminating him on May 10, 2006, and because Torain has not established that Clear Channel foreclosed its rights under the contract to enforce the termination provisions under the Employment Agreement, Torain's claim for breach of contract fails as a matter of law.[16]

### d. Plaintiff's Remaining Claims

Clear Channel contends that plaintiff's implied covenant of

---

[16] Clear Channel argues that Torain is unable to establish the other elements of a breach of contract claim, namely, his own performance under the contract and damages. (Def.'s Mem. 22-23.)  The Court need not reach these arguments. Torain's inability to demonstrate that his termination violated the Employment Agreement is fatal to his breach of contract claim.

good faith and fair dealing claim, and his claim that Clear

Channel violated New York Labor Law, also fail as a matter of

law.    Torain does not address these arguments in his opposition

papers.   This Court agrees with Clear Channel, and concludes

that plaintiff's remaining claims must also be dismissed.

First, Clear Channel correctly notes that, pursuant to

Texas law, there is no viable claim for breach of the implied

covenant of good faith and fair dealing in an employment action.

City of Midland v. O'Bryant, 18 S.W.3d 209, 216, 43 Tex. Sup. J.

884 (Tex. 2000) (holding that there is no duty of good faith and

fair dealing in the employment context, regardless of whether

employment is at-will or governed by an express agreement); see

Stover v. I2 Techs., Inc., No. 3:02-CV-2202-R, 2003 U.S. Dist.

LEXIS 12126, at *12 (N.D. Tex. July 14, 2003) (dismissing

plaintiff-employee's claim for breach of the duty of good faith

and fair dealing as "'there is no cause of action in Texas based

on a duty of good faith and fair dealing in the context of an

employer/employee relationship.'" (citing Midland, 18 S.W.2d at

215)).   Accordingly, Torain's second cause of action must be

dismissed as a matter of law.

Second, because Torain's labor law claims are premised on

Clear Channel's failure to pay certain monies due to him under

the Employment Agreement, and because this Court holds as a

matter of law that that Clear Channel's for cause termination of

42

Torain was consistent with the Employment Agreement, Torain is not entitled to any additional wages or payments under the Employment Agreement. (See Employment Agreement § 6(d).)   Thus, his New York Labor Law claim fails as a matter of law. Tierney v. Capricorn Investors, L.P., 189 A.D.2d 629, 632, 592 N.Y.S.2d 700, 703 (N.Y. App. Div. 1993) (holding that "plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages"); see Zaitsev v. Salomon Bros., 60 F.3d 1001, 1004 (2d Cir. 1995) (holding that claim for unpaid wages under New York Labor Law § 190 et seq. was properly dismissed where plaintiff "can prove no contract that will satisfy the Statute of Frauds" (citing Tierney, 189 A.D.2d at 632, 592 N.Y.S.2d at 703)).

Accordingly, Clear Channel's motion for summary judgment on all of plaintiff's claims is granted, and plaintiff's complaint is dismissed in its entirety.

### IV.   Clear Channel's Settlement and Indemnification Claim

The Court now turns to the parties' motions for summary judgment on Clear Channel's counterclaim seeking contractual indemnification from Torain for Clear Channel's settlement with the Caseys.   Because the indemnification language is contained in a contract governed by a Texas choice-of-law provision, pursuant to the case law described above, the Court will interpret the indemnity provision pursuant to Texas law.   Thus,

43

in determining the breadth of the indemnity provision, and any

defenses to the application of the indemnity provision, the

Court will consult Texas law.  However, the Court's analysis of

the Caseys' potential claims against Clear Channel should be

analyzed under New York law, as those extra-contractual claims

were to be brought in the New York courts.[17]  Accordingly, the

Court will determine whether the Caseys had a viable claim

against Clear Channel under New York law.

### a. Applicable Law Concerning Indemnity Agreements

In construing an indemnity agreement, the parties'

intention must "first be ascertained by rules of construction

applicable to contracts generally," and once the parties' intent

is determined, "the doctrine of strictissimi juris[18] applies

---

[17] While New York courts give effect to choice-of-law provisions in a
contract, under New York law, extra-contractual claims "are outside the scope
of contractual choice-of-law provisions that specify what law governs
construction of the terms of the contract . . . ." Finance One Pub. Co. Ltd.
v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 335 (2d Cir. 2005), cert.
denied, 548 U.S. 904 (2006); Klock v. Lehman Bros. Kuhn Loeb, Inc., 584 F.
Supp. 210, 215 (S.D.N.Y. 1984) (stating that, under New York law, "[a]
contractual choice of law provision governs only a cause of action sounding
in contract").  Moreover, "[i]f no conflict is found between the law of the
forum and any other jurisdiction whose law is invoked, then the Court should
apply the law of the forum." Alitalia Linee Aeree Italiane, S.p.A. v. Airline
Tariff Pub. Co., 580 F. Supp. 2d 285, 290 (S.D.N.Y. 2008) (citing Excess Ins.
Co. v. Factory Mut. Ins. Co., 2 A.D.3d 150, 151, 769 N.Y.S.2d 487 (N.Y. App.
Div. 2003), aff'd 3 N.Y.3d 577, 789 N.Y.S.2d 461 (N.Y. 2004)); see also Eagle
Access, LLC v. BHA, Inc., No. 05 Civ. 2837, 2007 WL 193725, at *3 (S.D.N.Y.
Jan. 25, 2007) ("Under New York law, the first step in any case presenting a
potential choice of law issue is to determine whether there is an actual
conflict between the laws of the jurisdictions involved; if no conflict
exists, then the inquiry ends." (citing Stolarz, 81 N.Y.2d at 223, 613 N.E.2d
at 937)).  Here, there does not appear to be any conflict between New York
and Texas laws as to defamation or intentional infliction of emotional
distress. (See Def.'s Indem. Opp'n 18 n.6, 20 n.7; Def.'s Indem. Reply 2.)
[18] Strictissimi juris is defined as "[o]f the strictest right or law; to be
interpreted in the strictest manner." Black's Law Dictionary 1435 (7th Ed.

44

and the liability of the indemnitor under his contract as thus
interpreted will not be extended beyond the terms of the
agreement." Mitchell's Inc, 303 S.W.2d at 778, 157 Tex. at 428;
see E.I. Du Pont De Nemours & Co. v. Shell Oil Co., 259 S.W.3d
800, 805 (Tex. App. 2007) ("Indemnity agreements must be
strictly construed, pursuant to the usual principles of contract
interpretation, in order to give effect to the parties' intent
as expressed in the agreement."); Safeco Ins. Co. of Am. v.
Gaubert, 829 S.W.2d 274, 281 (Tex. App. 1992) (explaining that a
contract for indemnity is read as any other contract, such that
the words and phrases in the agreement are given their
"ordinary, popular, and commonly accepted meaning," and once the
parties' intent is ascertained, the doctrine of strictissimi
juris applies).

Moreover, pursuant to the "express negligence doctrine," an
indemnity agreement will not indemnify a party for that party's
own negligence, unless the contract specifically states that the
indemnitee will be indemnified for its own negligence. Ethyl,
725 S.W.2d at 708 (adopting the express negligence doctrine,
which provides that "parties seeking to indemnify the indemnitee
from the consequences of its own negligence must express that
intent in specific terms . . . [and] the intent of the parties

---

1999). The doctrine reflects a "principle of substantive law," and not a
rule of construction. Mitchell's Inc., v. Friedman, 303 S.W.2d 775, 777, 157
Tex. 424, 428-29 (Tex. 1957), overruled on other grounds by, Ethyl Corp. v.
Daniel Const. Co., 725 S.W.2d 705, 30 Tex. Sup. J. 255 (Tex. 1987).

must be specifically stated within the four corners of the
contract"); see XL Specialty Ins. Co. v. Kiewit Offshore Servs.,
Ltd., 513 F.3d 146, 149 (5th Cir. 2008) ("Texas's express
negligence rule is a 'rule of contract interpretation that
applies specifically to agreements to indemnify another party
for the consequences of that party's own negligence.'" (quoting
Quorum Health Serv. V. Maverick County Hosp. Dist., 308 F.3d
451, 458 (5th Cir. 2002))).

### b. **Application of Law Regarding Indemnity Agreements**

Here, the Employment Agreement provides that Clear Channel
is entitled to indemnity for "any claim, demand, suit,
proceeding, action or cause of action . . . arising out of or in
connection with [Torain's] performance of duties under [the
Employment Agreement], or arising out of or in connection with
[Torain's] conduct outside the scope of his [] employment.
(Employment Agreement § 16(b).)  This Court concludes, as a
matter of law, that the Caseys' putative claims against Clear
Channel fall within the clear and unambiguous language of the
indemnity provision of the Employment Agreement.  Giving the
terms of the indemnity provision their "ordinary, popular, and
commonly accepted meaning," Safeco, 829 S.W.2d at 281, Torain's
on-air statements in May 2006 arise out of his duties as a radio
personality for Clear Channel.  Moreover, Torain's suggestion
that the fact that the Caseys never filed suit is dispositive of

46

Clear Channel's right to indemnification (Pl.'s Indem. Mem. 6-
7), is inconsistent with the clear terms of the indemnity
provision.[19]  By using the terms "claim, demand, suit,
proceeding, action or cause of action asserted or instituted,"
the parties clearly intended to cover claims both formally and
informally asserted against Clear Channel.   Therefore, because
it is undisputed that the Caseys asserted a claim against Clear
Channel for Torain's on-air statements, and the Caseys indicated
that they intended to commence an action in the New York state
courts, the unambiguous language of the Employment Agreement
indicates that Torain is responsible for indemnifying Clear
Channel.

        The Court also rejects Torain's argument that he is not
obligated to indemnify Clear Channel because of Clear Channel's
own negligence in failing to "dump" the May 2006 statements.
(Pl.'s Indem. Opp'n 17.)   The Court agrees with plaintiff that
the indemnification language in the Employment Agreement would
not satisfy the express negligence doctrine, as the provision
fails to specifically assert that Clear Channel would be
indemnified for its own negligence. See Ethyl, 725 S.W.2d at 708
(holding that the indemnity provision's coverage of "any loss"

---

[19] In addition, the fact that Clear Channel settled with the Caseys before
they formally filed suit does not make the payment "voluntary." (See Pl.'s
Indem. Mem. 6-7.)  As discussed below, under Texas law, an indemnitee, like
Clear Channel, can recover for its settlement payments, provided that the
indemnitee can demonstrate its potential liability, and that the settlement
was reasonable, prudent and made in good faith under the circumstances.

fails to meet the express negligence test).  However, the
express negligence doctrine would only preclude Clear Channel's
recovery if Clear Channel sought indemnification for negligence
claims asserted against it.  Instead, as discussed more fully
below, Clear Channel's potential liability for the Caseys'
defamation and intentional infliction of emotional distress
claims is based upon Clear Channel's vicarious liability for
Torain's intentional torts committed in the scope of his
employment.  Accordingly, Torain can be responsible for
indemnifying Clear Channel for the Caseys' claims, regardless of
the express negligence doctrine. See English v. Am. States Ins.
Co., 174 S.W.3d 366, 375 (Tex. App. 2005) (holding that the
express negligence doctrine does not relieve indemnitor of its
responsibility to pay for or provide a defense to the non-
negligence claims, such as trespass, asserted against
indemnitee); DDD Energy, Inc. v. Veritas DGC Land, Inc., 60
S.W.3d 880, 885 (Tex. App. 2001) (holding that the express
negligence doctrine "does not apply where an indemnitee is
seeking indemnification from claims not based on the negligence
of the indemnitee").

### c. **Applicable Law Regarding Settling Indemnitees**

Having determined that the indemnity provisions of the
Employment Agreement would require Torain to indemnify Clear
Channel for the Caseys' claims, the final issue that this Court

must address is whether Clear Channel, as a settling indemnitee, is entitled to indemnification for the Settlement Payment.  For Clear Channel to recover for its settlement payment to the Caseys, Clear Channel, as indemnitee, must demonstrate that potential liability existed, and that the settlement was reasonable, prudent, and made in good faith under the circumstances. Amerada Hess Corp. v. Wood Group Prod. Tech., 30 S.W.3d 5, 11 (Tex. App. 2000); accord XL Specialty, 513 F.3d at 152 ("'Under Texas law, where an indemnitee enters into a settlement with a third party, it may recover from the indemnitor only upon a showing that potential liability existed, and that the settlement was reasonable, prudent, and in good faith under the circumstances.'" (quoting Ins. Co. of N. Am. v. Aberdeen Ins. Servs., 253 F.3d 878, 879 (5th Cir. 2001))); Aerospatiale Helicopter Corp. v. Universal Health Servs., Inc., 778 S.W.2d 492, 500 (Tex. Civ. App. 1989) ("Where an indemnitee, absent an unconditional contractual right to settle, settles a claim against it without obtaining a judicial determination of its liability, it assumes the burden in its action for reimbursement of proving facts which might have rendered it liable to the claimant, as well as the reasonableness of the amount which it paid."). However, "'the settling indemnitee need not prove actual liability to the third party before

49

recovering from the indemnitor.'" XL Specialty, 513 F.3d at 152 (quoted reference omitted).[20]

The Court concludes that there are questions of fact regarding Clear Channel's settlement, and thus, the parties' motions for summary judgment on Clear Channel's counterclaim must be denied.  In particular, summary judgment is inappropriate because (i) it is unclear whether Clear Channel settled the Caseys' claims asserted only against Clear Channel, or whether the settlement payment also covered the Caseys' claims against Torain, and (ii) there is insufficient evidence to demonstrate that the amount of the Settlement Payment is reasonable.

### d. **Application of Law Regarding Settling Indemnitees**

The Court first addresses Clear Channel's potential liability to the Caseys for defamation and intentional infliction of emotional distress because of Torain's undisputed on-air statements.  Under New York law, which governs the Caseys' claims, an employer is vicariously liable for its employee's acts conducted in the scope of his or her employment. See Judith M., 93 N.Y.2d at 933, 715 N.E.2d at 96; Loughry, 67 N.Y.2d at 377-78, 494 N.E.2d at 74.  This is true regardless of whether the employee's acts were authorized, as an employer can

---

[20] Despite plaintiff's arguments concerning the fact that he did not have notice of the settlement (Pl.'s Indem. Mem. 3, 7-8; Pl.'s Indem. Opp'n 10), notice is not a requirement under Texas law.

be liable for an employee's acts even if those acts were against company policy. <u>Loughry</u>, 67 N.Y.2d at 377-78, 494 N.E.2d at 74.[21] The Caseys asserted a claim for defamation and one for intentional infliction of emotional distress.

Clear Channel can establish that it was potentially liable to the Caseys for defamation.  To establish a defamation claim under New York law, a plaintiff must show (1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault as judged by, at a minimum, a negligence standard, and (4) it must either cause special harm or constitute defamation per se. <u>Epifani v. Johnson</u>, 882 N.Y.S.2d 234, 242 (N.Y. App. Div. 2009); <u>Dillon v. City of New York</u>, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (N.Y. App. Div. 1999).  For a defamation claim to give rise to per se liability, it must "'consist of statements (i) charging plaintiff with a serious crime; (ii) that tend to injure another in his or her trade, business or profession; (iii) that plaintiff has a loathsome disease; or (iv) imputing unchastity to a woman.'" <u>Walia v. Vivek Purmasir & Assocs.</u>, 160 F. Supp. 2d 380, 394 (E.D.N.Y. 2000) (citing <u>Liberman v. Gelstein</u>, 80 N.Y.2d 429,

---

[21] Plaintiff again argues that Clear Channel cannot be liable to the Caseys unless it authorized or condoned Torain's on-air statements. (Pl.'s Indem. Reply 9-10.)  The Court reiterates that Clear Channel's recognition that it could be vicariously liable to the Caseys, and thus responsible for compensatory damages for Torain's statement, is entirely separate from the question of whether Clear Channel could be held liable for punitive damages. As the record is devoid of any indication that Clear Channel concedes, or is now seeking indemnification for, punitive damages, the Court once again denies this nonsensical argument.

435, 590 N.Y.S.2d 857, 860 (N.Y. 1992)); Harris v. Hirsh, 228
A.D.2d 206, 208, 643 N.Y.S.2d 556, 559 (N.Y. App. Div. 1996)
(explaining that "imputing unchastity to a woman" is one of four
classic exceptions to the requirement that a plaintiff prove
actual damages in a defamation case).

Here, plaintiff proffers no evidence to contradict Gia
Casey's undisputed assertion that the statements Torain made
about her past sexual conduct were entirely false. (Casey Aff. ¶
8.)  It is also undisputed that these statements were
"published" as Torain admits that he made these statements
during his radio broadcast.  Moreover, because it is undisputed
that Torain relied on information he received from unidentified
listeners to his radio station, without conducting any
investigation of his own, there are sufficient facts to
demonstrate that Torain was at least negligent in making on-air
comments about Gia Casey. (See Def.'s Indem. 56.1 ¶ 15.)
Finally, Torain's statements about Gia Casey's past sexual
conduct, including Torain's undisputed use of the terms "slut"
and "whore," can give rise to per se liability for defamation,
thus obviating the need for the Caseys to prove special damages.
See, e.g., Walia, 160 F. Supp. 2d at 394-95 (finding that
statements, including referring to plaintiff as a "whore" and
"slut," constitute defamation per se as they impute unchastity
to plaintiff).  In sum, the Court concludes that Clear Channel

has offered sufficient undisputed facts to establish its potential liability for defamation to the Caseys.

Similarly, Clear Channel can establish that it was potentially liable to the Caseys for intentional infliction of emotional distress.  Under New York law, a claim for intentional infliction of emotional distress requires a plaintiff to demonstrate (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001); Howell v. N.Y. Post Co., Inc., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (N.Y. 1993) (Kaye, J.).

Here, it is undisputed that, in addition to the comments regarding Gia Casey's sexual relations, Torain made on-air statements about having sexual relations and engaging in illicit behavior with the Caseys' four year-old daughter, and that Torain offered money to any listener with information as to the child's whereabouts. (Def.'s Indem. 56.1 ¶¶ 3-9.)  The Court concludes that these comments can be considered "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community,'" thereby satisfying the first prong of an intentional infliction of

emotional distress claim. <u>Howell</u>, 81 N.Y.2d at 122, 596 N.Y.S.2d
at 353 (quoted reference omitted).  Moreover, with regard to the
second element of the emotional distress claim, plaintiff has
failed to offer any evidence to contradict the uncontested fact
that Torain appears to have made these statements with no
investigation, and little thought as to the impact of these
statements. (<u>See</u> Def.'s Indem. 56.1 ¶ 15.)  Finally, Torain
fails to dispute Gia Casey's sworn statement that she "believed
that Mr. Torain's listeners were providing him with information
about [her] and [her] family in response to his requests," and
that she "suffered severe and ongoing emotional distress as a
direct and proximate result of Mr. Torain's on-air statements,
including but not limited to humiliation, depression, loss of
self-esteem and enormous fear for the welfare and safety of
[her] daughter," which would satisfy the third and fourth
elements of the claim. (Casey Aff. ¶¶ 7, 9.)  Thus, there are
sufficient undisputed facts to establish that Clear Channel was
potentially liable to the Caseys for intentional infliction of
emotional distress.

Plaintiff's arguments focus on Torain's defenses to the
Caseys' claims. (<u>See</u> Pl.'s Indem. Mem. 7-8; Pl.'s Indem. Opp'n
13-17.)  The Court reminds plaintiff that the question is not
whether Clear Channel, as settling indemnitee, is actually
liable to the Caseys, but whether it was potentially liable to

them. See XL Specialty, 513 F.3d at 152.  Merely asserting that

a defense exists and could have been asserted does not preclude

a finding of potential liability. Cf. H.S.M. Acquisitions, Inc.

v. West, 917 S.W.2d 872, 880 (Tex. App. 1996) (holding that

indemnitee's settlement was unreasonable and there was no

potential liability where, prior to settlement, a court

determined that indemnitee was not liable for certain damages

indemnitee included in its settlement payment).  Indeed, to the

extent that Clear Channel, as indemnitee, settled only those

claims that the Caseys asserted against it, the fact that

Torain, as indemnitor, might have a good defense to the Caseys'

claims is not dispositive of Torain's responsibility.  For

example, in Aerospatiale, indemnitor argued that indemnitee was

not entitled to recovery because indemnitor had a good defense

to the claims asserted. 778 S.W.2d at 500.  The court rejected

indemnitor's argument, explaining that because indemnitee "did

not settle a claim held by a third party against [indemnitor],"

indemnitee's decision to settle claims asserted solely against

it "does not bar them from seeking indemnification from

[indemnitor] should the contract so allow." Id.

    However, in the instant case, while it is undisputed that

only the Caseys and Clear Channel executed the settlement

agreement, it is not clear whether Clear Channel's settlement

with the Caseys reflected only the Caseys' claims against Clear

Channel, or whether it also proposed to settle the Caseys'
claims against Torain. (Compare Hogan Decl. ¶ 13 ("In making the
determination to offer the Settlement Payment to Mr. and Mrs.
Casey, I considered the Settlement Payment to constitute
reasonable compensation for the claims alleged by the Caseys
against Mr. Torain and Clear Channel." (emphasis added)) with
Casey Decl. ¶ 10 ("My husband and I executed a Confidential
Settlement Agreement and General Release with Clear Channel on
or about June 22, 2006." (emphasis added).)  If in fact, Clear
Channel settled on behalf of itself and Torain, and it failed to
consider a viable defense that Torain could have asserted to
defend against one of the Caseys' claims, Clear Channel can be
barred from indemnity for such claim. See Producing Props., Inc.
v. Sohio Petroleum Co., 428 S.W.2d 365, 367 (Tex. Civ. App.
1968) ("[w]hen an indemnitee pays a third party's money claim
against an indemnitor to which claim the indemnitor has a good
defense, the indemnitee is not entitled to recover against the
indemnitor.").[22]

---

[22] As described below, Clear Channel fails to identify with any specificity
which potential defenses it considered before Clear Channel settled with the
Caseys.  Because there are questions of fact as to what claims were actually
settled, and what defenses were actually considered, it is unnecessary for
the Court to consider the viability of the specific defenses that plaintiff
raises in his papers.  If, for example, Clear Channel did consider a defense
Torain suggests, but Clear Channel still determined that it was reasonable to
settle, Clear Channel would be entitled to indemnification. See XL Specialty,
513 F.3d at 153 (rejecting indemnitor's argument that indemnitee's settlement
was unreasonable where indemnitee provided an affidavit that it considered
defenses raised by indemnitor but found that those defenses were unlikely to
immunize indemnitee from suit).

The Court next turns to whether the settlement was
reasonable, prudent, and made in good faith. XL Specialty, 513
F.3d at 152; Amerada, 30 S.W.3d at 11.  Clear Channel proffers
Hogan's affidavit in support of its contention that Clear
Channel investigated the Caseys' claims, its possible defenses
to those claims, and its potential liability to the Caseys
before agreeing to settle with the Caseys. (Hogan Aff. ¶¶ 11-
14.)  Moreover, there is no evidence of collusion, or any
indication that Clear Channel's settlement was altered by an
expectation of indemnification. (See id. ¶ 15.) Cf. H.S.M.
Acquisition, 917 S.W.2d at 881 (finding that the settlement
between the claimant and indemnitee was collusive where claimant
and indemnitee agreed to keep the terms of the settlement
confidential, claimant agreed to collect the judgment only from
the proceeds of indemnitee's claims against indemnitor, and
indemnitee agreed to pursue claimant's allegations against
indemnitor).  The fact that Torain contends that he would not
have settled the claims does not make the settlement
unreasonable, as the inquiry is whether Clear Channel's actions
were reasonable from its perspective. Aerospatiale, 778 S.W.2d
at 500 ("It is necessary for [indemnitee] to establish that from
its standpoint the settlement was made in good faith and was
reasonable and prudent under the circumstances.").  Accordingly,
Torain fails to offer any evidence to dispute Clear Channel's

contention that Clear Channel's decision to settle with the
Caseys was reasonable under the circumstances, and entered in
good faith.

There are, however, questions of fact as to the
reasonableness of the amount Clear Channel agreed to pay the
Caseys to settle their claims. See H.S.M. Acquisitions, 817
S.W.2d at 881-82 (explaining that even if indemnitee's
affidavits show that its "representatives acted in good faith in
settling given its potential liability . . . [that] does not
fulfill [indemnitee's] burden since [indemnitee] also had to
prove that the settlement was reasonable and not just that the
actions of its representatives were in good faith").  While
Clear Channel contends that the Settlement Payment was
"reasonable compensation for the claims alleged by the Caseys"
(Hogan Aff. ¶ 13), Clear Channel provides no evidence as to the
amount of money the Caseys demanded when they brought their
claims, no evidence concerning how Clear Channel estimated its
potential damages, no indication of what specific theories of
liability or defenses were considered, no evidence on how Clear
Channel calculated its potential costs of litigating an action,
no expert testimony assessing damages, and no indication as to
how the amount of the settlement was less than the costs of

litigating the Caseys' claims.[23] Cf. XL Specialty, 513 F.3d at
153 ("In light of [indemnitee's] undisputed potential liability,
and the evidence indicating that [indemnitee] considered the
possible defenses, we find that the $4 million settlement was
prudent and reasonable from [indemnitee's] perspective."); E.I.
Du Pont, 259 S.W.3d at 809, 810 (holding that indemnitee
conclusively established that its settlement costs were
reasonable where indemnitee's proffered affidavits demonstrated
how the settlement costs were calculated and how the settlement
was substantially less than the costs of a continued defense);
Amerada Hess, 30 S.W.2d at 11 ("Questions regarding the
reasonableness of a settlement in most personal injury cases are
question upon which the trier of fact must be guided solely by
expert testimony.").  Without some evidence as to how Clear
Channel determined the amount for the Settlement Payment, and,
thus, how that amount is reasonable, the Court is unable to

---

[23] The Court is unpersuaded by plaintiff's argument that the Court should
disregard Clear Channel's assertion that it investigated and analyzed the
Caseys' claims because Clear Channel failed to provide discovery to that
effect. (See Pl.'s Indem. Counter 56.1 ¶¶ 22, 23; Cinque Decl. ¶ 7.)  While
the Court believes that there is a question of fact as to exactly how and
what Clear Channel considered in calculating the Settlement Payment, Clear
Channel is not limited to making that showing through documentary evidence.
Nevertheless, to the extent Clear Channel now seeks to introduce information
that it did not produce, such evidence might be precluded from use at trial.
See Fed. R. Civ. P. 37(c) (1) ("If a party fails to provide information or
identify a witness as required by Rule 26(a) or (e), the party is not allowed
to use that information or witness to supply evidence on a motion, at a
hearing, or at a trial, unless the failure was substantially justified or is
harmless.").  However, without knowing the particular documents, if any, that
Clear Channel might seek to introduce at trial, and whether those documents
should have been previously produced, plaintiff's request to disregard Clear
Channel's argument is premature.

conclude as a matter of law whether Clear Channel is entitled to indemnification for the Settlement Payment.[24]

## CONCLUSION

For the foregoing reasons, Clear Channel's motion for summary judgment on Torain's complaint is GRANTED in its entirety, and plaintiff's complaint is hereby DISMISSED. However, there are questions of fact as to Clear Channel's counterclaim for indemnification.  Accordingly, both Clear Channel's and Torain's motions for summary judgment on Clear Channel's third counterclaim are DENIED.  The parties shall appear for a pre-trial conference before this Court on October 1, 2009 at 11:00 a.m.

**SO ORDERED.**

**New York, New York**
September    ,  2009

_____
U.S.D.J.

---

[24] Torain's proposed defenses to the Caseys' claims can be relevant to a determination of whether the settlement amount was reasonable under the circumstances.  In other words, if Clear Channel failed to address or appreciate valid defenses to the Caseys' claims, as plaintiff suggests, it might demonstrate that the amount of the Settlement Payment was not reasonable.